[Civ. No. 13886.   Second Dist., Div. Three.   Aug. 30, 1943.]

EARL RANCH, LTD. (a Corporation), Appellant, v. DALE
MARCHUS et al., Respondents.

William Katz for Appellant.

Frederick M. Kraft for Respondents.

SHINN, Acting P. J.—This is an appeal by plaintiff in an action for declaratory relief involving the construction of the rights of plaintiff landlord and defendant tenants under a lease of agricultural land, the questions in issue being related to rentals to be paid by the tenants and certain credits to be given by the landlord. The principal controversy is over the construction to be given to a written modification of the lease with respect to the payment of cash rentals. The subject of the lease was an alfalfa ranch of some 640 acres and the farming equipment thereon. The lease was entered into February 1, 1940, and was for a term of six years at an annual cash rental of $3,000, payable in stated installments. In November, 1940, the parties executed a modification agreement, the pertinent provisions of which read as follows: "THEREFORE, it is understood and willingly agreed that the rental as provided in the main Lease as above referred to, shall and will, on and after January 1, 1941, be as follows and not otherwise. The date and time of payment as provided in the main Lease shall remain as set forth in said Lease. The base minimum rental fixed herein shall be $2000.00 per annum, same to be paid in three equal installments as provided in the main Lease as referred to herein. A graduate scale of rental to be paid over and above and in addition to the $2000.00 rental as herein stated shall be as follows: For each additional Dollar per ton for hay, over and above $10.00 per ton shall provide that the Lessee, DALE MARCUS, shall pay $200.00 per year, provided as follows:

"When hay is $11.00 per ton, rental to be $2200.00
  "   "   " $12.00  "   "    "   "  " $2400.00
  "   "   " $13.00  "   "    "   "  " $2600.00
  "   "   " $14.00  "   "    "   "  " $2800.00
  "   "   " $15.00  "   "    "   "  " $3000.00

In arriving at the average price per ton for hay and wherein fractions of the Dollar per ton is arrived at, all fractions of the Dollar shall bear its just proportion to each ton the same as if there were no fractions involved. It is provided further that all additional payments over and above the $2000.00 as mentioned herein, shall be paid in three equal installments and at the same time as the annual installments are made as provided in the main Lease."

There were further provisions for the averaging of the prices of two different grades of hay and for the deduction from the average price of the sum of $2.00 per ton for hauling, these provisions having the effect of reducing by $2.00 per ton the prices which would govern the rental to be paid as stated in the agreement. Between the date of this agreement and the commencement of the action the price of hay through different periods, commencing April 1, 1941, ranged between $17 and $23 per ton.

It is the contention of plaintiff that rental under the modification agreement was increased at the rate of $200 per year with each increase of $1.00 per ton above as well as below the price of $15. Defendants contended, and the trial court held, that the maximum rental under the agreement was $3,000 per year, which it would be under the agreement at a price of $15 per ton, and that any increase above that price gave the landlord no additional rental. We favor the construction of the lease which was given it by the trial court. Each of the parties insisted upon the trial that the agreement is unambiguous. Plaintiff, at one stage of the case, sought to prove the substance of a conversation between plaintiff's president and one of the defendants during the negotiation of the agreement. Defendants' objection to the evidence was sustained and, as we read the record, plaintiff acquiesced in the ruling, stating in part, "If Your Honor please, I was going to say that in my opinion I think the objection might be well taken, but still, on this proposition I want it put up before the Court and have a ruling on it, and that is when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, and my

thought is that the intention of the parties can be ascertained from the writing alone.'' The trial court reached its conclusion as to the meaning of the agreement without resort to extrinsic evidence, and upon the appeal there is no contention on either side that it is ambiguous.

From our analysis of the agreement we are of the opinion that it is open to the construction which the trial court gave it and that such construction can properly be given without resort to the rules which pertain where ambiguity and uncertainty exist. We are further of the opinion that when it is attempted to apply the sliding scale of rental to prices above $15 per ton the agreement becomes ambiguous and subject to rules of interpretation that would not otherwise obtain.

Disregarding for the moment the question of ambiguity, we see that the agreement called for an increase of $200 per year above the base rental of $2,000 for every dollar per ton in the price of hay above $10 and that the price schedule was preceded by the words ''provided as follows.'' Without this qualifying clause there would have been no ceiling upon the rental to be paid, and yet if we adopt this construction we will have ignored the proviso and will have held that it is superfluous and means nothing. But under familiar rules of construction we must give effect to each provision of the agreement if we can and must therefore attribute to the parties a purpose in setting out the schedule to express their understanding with relation to the matters embraced therein. It definitely covers prices between $10 and $15 per ton and it ends at the higher figure. Plaintiff contends that the scale was added merely by way of illustration as to how the increases would operate, but why such an illustration would have been necessary, in view of the clear provisions that preceded it, is not at all clear. We deem it more reasonable to conclude that the parties did not have in mind and did not intend to contract especially with reference to prices of hay in excess of $15 per ton. It is significant, we think, that the schedule ended at the price which would give the lessor the rate of rental stipulated in the original lease. If it had been intended that the rent should go higher, that could have been easily expressed by adding to the schedule ''et cetera'' or an equivalent expression. The failure of the lessor to have such words incorporated appears to us to be a sufficient answer to the contention that it would not have consented to a lower rental when hay was cheap unless it had intended to recoup the loss when hay went above $15 per ton. The trial court

was therefore warranted in construing the schedule as a modification of the preceding general provision for increased rentals based upon varying prices of hay, and in concluding that the maximum rate would be one which would return an annual rental of $3,000.

If, under the construction urged by plaintiff, the agreement would be ambiguous, pertinent rules for the interpretation of ambiguities fortify the conclusion reached by the trial court. We have seen that the rental schedule is quite clear insofar as it runs in favor of the lessees, that is to say, as to all prices of $15 per ton and under, but we find no clearly expressed intention that the lessees should pay at a higher rate than $3,000 per year. If there is any implication that the rent might take a higher rate, it must be found in language which is uncertain and ambiguous. Certain rules of construction which we shall note forbid us to resolve ambiguities in favor of plaintiff to establish the implied obligation for which it contends. Section 1654 of the Civil Code provides that in cases of uncertainty not removed under other rules, the language of a contract shall be interpreted most strongly against the party who caused the uncertainty to exist, and that the promisor is presumed to be such party. Under the rule stated in section 1864 of the Code of Civil Procedure, where the parties do not agree in their understanding of a contract and different constructions are equally proper, the one is to be taken which is more favorable to the party in whose favor the provision in question was made. It would be helpful to know which party was responsible for the ambiguity which led to the dispute, but the record does not show the authorship of the agreement or any part thereof. Under the cited code sections it is necessary to determine which party was the promisor under the modification agreement, for if the new basis of rental was in favor of the tenants, they would have the benefit of the stated rules of construction. It must be conceded that if we were considering the tenants' obligation to pay rent under the original lease, they would be the promisors and presumptively, under the circumstances, responsible for the ambiguity. (*Simen* v. *Sam Aftergut Co.*, (1915) 26 Cal.App. 361 [146 P. 1058].) But we think the reverse is true as to the modification agreement which we construe, so far as its clear provisions go, as one in favor of the tenants. There is nothing in the evidence as to the price of hay on or before the date of the agreement nor

for about five months thereafter. But if it was not a fact that the price was less than $15 a ton, the parties evidently expected it to become a fact and the rent was lowered to meet either that existing or expected situation, as otherwise the agreement would have been without purpose. The promise of the landlord was essentially one to accept a rental as low as $2,000 per year. Whatever the range might be between $2,000 and $3,000 per year, the tenants were under no obligation to bring the total up to the higher figure. They were released from their obligation to pay a flat $3,000 per year, which was certainly to their advantage. It would be indeed difficult to doubt that the rental obligation was modified because the flat rental would be unduly heavy at prices below $15 per ton. It would not be so clear, of course, that the tenants were the beneficiaries of the agreement if they were required to pay at rates above $3,000 per year, but we need not consider that situation because we cannot give the contract such a construction. Its failure to provide for higher rates except through a construction which would resolve ambiguities in favor of the landlord leaves it, so far as construction is concerned, as one strictly in favor of the tenants.

Respondents make the broad assertion that leases of real property are to be construed against the landlord and that all uncertainties therein are to be resolved in favor of the tenant. The cases they cite on this proposition do not support it and it is clear that there is no such general rule. Leases are to be construed as are other contracts and, so far as uncertainties are concerned, according to the nature of the specific obligation under consideration. The code sections already referred to are all sufficient for the purposes of the present case. Executory contracts as a rule specify reciprocal executory obligations. In a lease, uncertainty as to the obligations of the landlord or as to those of the tenant may result from erroneous or incomplete expression. While it is to be borne in mind that the intentions of the parties are to be ascertained from a consideration of the entire instrument, it is nevertheless true that the nature of each covenant must be examined when it is necessary to know which party is the promisor or obligor thereunder. Such a one may be found to be the lessee, as in *Simen v. Sam Aftergut Co.*, *supra*, 26 Cal.App. 361 [146 P. 1058], where the original rental obligation was involved, or it may be found to be the lessor, as was the case in *Edward Barron Estate Co. v. Waterman*,

(1916) 32 Cal.App. 171 [162 P. 410], and *Butt* v. *Maier & Zobelein Brewery,* (1907) 6 Cal.App. 581 [92 P. 652], where questions were involved as to the length of the term of leases.

It seems entirely clear that if a landlord agrees to an abatement or reduction of rent which has been already fixed by contract, he is making a simple promise in favor of his tenant. If the agreement is ambiguous the doubts must be resolved in favor of the tenant where, as is true here, authorship of the ambiguity is presumed to be with the landlord as the promisor. We must give effect to this rule of construction even though the trial court believed the agreement to be unambiguous. It is ambiguous only under plaintiff's interpretation.

On November 28, 1940, another agreement was made respecting the terms of the lease and providing as follows: "5. Lessees agree to repair and house that certain Venn Severin Diesel Engine located on the leased premises and that the cost thereof, estimated at approximately one thousand dollars ($1,000.00), shall be credited on account of rent due from Lessees to Lessor for the year 1941 upon presentation by Lessees of an itemized paid bill for said repairs and approval thereof by Lessor. 6. Lessees will pay to Western States Life Insurance Company as and when due for and on account of Lessor all interest for the year 1941 on the note executed by Lessor to Western States Life Insurance Company and secured by deed of trust on the leased premises, which said interest payments shall be credited on account of rent due from Lessees to Lessor under the Lease, as amended, and any balance due as and for rent after crediting said interest payments, as well as the cost of repair of the Venn Severin Diesel Engine in the preceding paragraph mentioned, shall be deferred to 1942 and such balance shall be paid in two equal installments, the first of which installments shall be payable on the first rent day and the second installment on the next succeeding rent day in the year 1942 and shall be in addition to the rentals due from Lessees to Lessor for the year 1942."

The lessees repaired the engine at a cost, as found by the court, of $2,495.11. Defendants were allowed for these repairs a credit of $1,070.42 on account of rent due for the year 1941. Defendants were also allowed a credit of $373.28 on

1941 rent for money paid under the provisions of said paragraph 6 to Western States Life Insurance Company. These credits, totaling $1,443.70, were to be allowed, under the judgment, only in the event that defendants paid $2,495.11 for repairs to the motor before July 1, 1942. It was found that the rental under the lease for 1941 amounted to $3,000 and that after deducting the credits of $1,070.42 and $373.28, there remained a balance of $1,556.30. This the court determined was payable one-half July 1, 1942, and one-half October 1, 1942, the same to be in addition to the 1942 rentals. The judgment was dated April 29, 1942, or some two months before the first payment of deferred rental in the amount of $778.15 fell due. Plaintiff's contention seems to be that the court erred in giving defendants until July 1, 1942, within which to pay for the repairs to the engine and still obtain a credit of $1,070.42 upon the 1941 rent. It is claimed that the failure of defendants to pay the cost of the repairs and to procure the lessor's approval of the itemized bill in 1941 was a waiver of the right to receive any credit on account of the repairs. No time was specified within which the repair bill should be paid and approved. Deferring it until July 1, 1942, did not affect the amount of the rent to be received by plaintiff, nor did it extend defendants' time, as stated in the agreement, to pay the balance of the 1941 rent in two installments during 1942. It is not clear how plaintiff could have been prejudiced by the court's construction of this provision of the agreement, which we deem to be a reasonable one as between the parties. There was no requirement that the credit be established prior to the time when it was to be applied on the rental account, namely, when the first installment of the balance of the rent fell due.

There are no other points urged by appellant which require discussion. We are of the opinion that the case was decided correctly in all material respects and that there is no reason for disturbing the judgment. The judgment is affirmed.

Wood (Parker), J., concurred. Shaw, J. pro tem., concurred in the judgment.

A petition for a rehearing was denied September 16, 1943, and appellant's petition for a hearing by the Supreme Court was denied October 28, 1943. Traynor, J., voted for a hearing.