[Civ. No. 18528.   Second Dist., Div. Three.   Dec. 27, 1951.]

A. J. KELLER, Appellant, v. HARVEY HIERS et al., Respondents.

W. J. RAVENSCROFT et al., Respondents, v. A. H. KELLER et al., Defendants; A. J. KELLER, Appellant.

Macbeth & Ford, Norman Macbeth and Patrick H. Ford for Appellant.

Harry J. Gross, Cook & Johnson, Harold E. White and Clifford A. Rohe for Respondents.

SHINN, P. J.—On November 13, 1947, plaintiff gave defendants and defendants accepted a written order for the purchase at $4.25 each of 1,000 soda fountain pumps to be manufactured by defendants as per sample furnished by plaintiff. The agreement read in part:

"Also, find enclosed a cashier's check for $2125.00 to be applied on our account, balance to be paid after completion and delivery of 1000 pumps. If said pumps are not completed and delivered within a period 90 days from this date, the sum of $2125.00 is to be returned to the A. J. Keller Sales Co. together with any attorney fees, court costs, etc., which may be incurred in the collection of said monies.

"The acceptance and cashing of the enclosed cashier's check be deemed as full and complete acceptance of this purchase order together with all its stipulations and shall make the same binding just the same as if it were a signed contract."

After plaintiff had granted several extensions of time and defendants had failed to fulfill their agreement it was terminated by plaintiff for nonperformance. He then brought this action seeking: (1) Return of $2,125 plus attorney's fees and costs of collection; (2) $10,000 damages for breach of the agreement; (3) rescission and the return of his deposit, and (4) an injunction against the use of his information and ideas for the manufacture of such pumps. Defendants answered and by a counterclaim and an action separately filed sought recovery for work, labor and services performed for

plaintiff of the reasonable value of $19,236.70. After an extended trial the court found that defendants had breached the contract and plaintiff was entitled to the return of $2,125 plus $500 attorney's fees and $96 as costs of collection, or a total of $2,721. Defendants were awarded $2,939.76 for work done for plaintiff and judgment was entered in their favor for the net sum of $218.76. Plaintiff appeals.

As the trial court construed the contract return of $2,125 was agreed upon as the exclusive measure of any damages which plaintiff might suffer as a result of defendants' breach. This construction is assailed by plaintiff. He says he was entitled not only to the return of $2,125 but also to damages for the loss of his bargain. The trial court was of the opinion that the parties had anticipated failure of the manufacturing effort and by their agreement had furnished the answer to the principal issue in the case. We do not disagree with this conclusion.

The questioned clause in the agreement established a definite sum as the measure of plaintiff's right and of defendants' liability in case of failure of performance by defendants. This was not merely the amount deposited but also liability for attorney's fees and costs that might become necessary in recovering the deposit. The circumstances under which the agreement was entered into shed light upon the intentions of the parties. The device had been conceived by plaintiff and had not previously been marketed or manufactured. The cost of manufacture had not been established. Time was made of the essence of the agreement. In case of total nonperformance by defendants plaintiff would regain his capital without expense, and have it available for financing another contract. In case of defendants' breach after partial performance plaintiff would be made whole either in money or goods. The problem of the trial court was to determine whether the parties intended that the return of plaintiff's money would satisfy defendants' liability for breach of their agreement. In arriving at a decision certain rules of construction were to be considered. If different constructions are equally proper that is to be taken which is most favorable to the party in whose favor the provision was made. (Code Civ. Proc., § 1864.) Defendants were the promisors with respect to the return of the deposit, but, insofar as the agreement indicated that plaintiff would not ask for more, he should be regarded as the promisor. (*Cf. Earl Ranch, Ltd.*

v. *Marchus,* 60 Cal.App.2d 379 [140 P.2d 891].) If uncertainty existed as to the scope of the agreement it was a latent one (see *Pacific Indem. Co.* v. *California etc., Ltd.,* 29 Cal. App.2d 260 [84 P.2d 313]), and since plaintiff prepared the agreement it should be construed most strongly against him (Civ. Code, § 1654). Although there was no uncertainty of language there was an uncertainty of meaning which required the court to determine the sense in which the parties understood it. We must presume that the court was of the opinion that plaintiff believed defendants understood that return of the deposit would satisfy plaintiff. If so, the court correctly construed the agreement to accord with defendants' understanding. (Civ. Code, § 1649.) It would have been quite reasonable for defendants to believe that plaintiff had specified in the writing the conditions that were satisfactory to him and had omitted none. Any difficulties with respect to interpretation were caused by plaintiff. He is not in a favorable position to contend that defendants would have accepted his proposal if it had stipulated that upon their default they would be required to return plaintiff's deposit, and in addition, compensate him for any damage he might have suffered. Plaintiff rescinded and sued for the return of his money and he also sued for damages. Any inconsistency in the two demands is immaterial, inasmuch as the judgment awarded plaintiff only what he was entitled to receive and defendants do not complain.

*Grant* v. *Beronio,* 97 Cal. 496 [32 P. 556], relied upon by plaintiff is not in point. It held that a provision ''In case of failure to make deed, money paid to be returned'' did not give the vendor the right to refuse to convey title upon the vendee's offer to pay the purchase price. Such is not the contention of the defendants. They claimed only that plaintiff's claims are in excess of what he had agreed to accept. The right of plaintiff to a return of his deposit was made certain. It was by no means certain at the time the agreement was entered into that under any and all circumstances that might develop plaintiff would have a right to rescind for defendants' default and also the right to have his deposit returned. And except for the agreement, he clearly would not have had a right to recover attorney's fees and costs. His sole remedy might have been in damages. It cannot be said that the agreement gave plaintiff only the rights he would have had without it.

For these reasons we think the court did not committ error in concluding that it was the intention of the parties that return of the deposit to plaintiff would be his exclusive remedy in the event of defendants' failure of performance.

Although we hold that plaintiff's recovery was limited by the purchase agreement to the return of his deposit, the correctness of the judgment is further established by plaintiff's failure to prove any greater damage. He relies upon testimony of one of the defendants that it would have cost defendants $10 per unit to complete the order. From this he argues that he should have been awarded $5.00 for each of 2,077 pumps, being the difference between the contract price and the cost of manufacture. The weakness of this claim is that there was no evidence that plaintiff had orders for pumps or that they would have been salable at $10 each, or salable at all, or that they would have had any value. ■ In the absence of evidence that plaintiff could have realized a profit through sales, or that the pumps would have had a value to him above cost, there was no foundation for an award for a loss of gain or profit. Even if we overlook for the moment the matter of the limitation of plaintiff's recovery under the trial court's interpretation of the agreement, we find in the record no basis for an award of damages in excess of the amount which the court allowed.

■ On April 16, 1948, following extensions to that date, the price was increased to $5.00 per unit and the time for performance was extended by plaintiff until May 13, 1948, by a writing stating "all of the terms and conditions of said contract shall remain in full force and effect." Plaintiff says this was a promise to restore to him $2,125 without any deductions or offsets upon any account whatsoever, inasmuch as certain offsets existed at that time and no mention of them was made. It is correct to say that by the writing of November 13, 1947, plaintiff assumed no obligation other than to pay for pumps delivered at $4.25 each. Two thousand one hundred twenty-five dollars was deposited against the total cost and the balance was to be paid when 1,000 pumps had been delivered. This implied that plaintiff was to be charged for them as they were delivered and accepted. It is immaterial whether the amounts were charged against the deposit or separately. Defendants were properly allowed an offset of $115 for pumps delivered and accepted.

■ Under separate arrangements defendants fabricated

certain tooling and dies upon plaintiff's orders for which the court allowed $2,590.76. In addition, $204 was allowed for pump parts delivered to plaintiff at his request after the contract had been terminated; also $30 for two specially constructed pumps, making the total $2,939.76.

Plaintiff questions these amounts in several particulars. It is claimed that the agreement for manufacture of the pumps and the one for the tooling and dies were so related that default in the manufacturing undertaking should have deprived defendants of a right to be paid for the tooling. Although the tooling was to be used in the manufacture of the pumps, the court found that it belongs to plaintiff. It was the subject of separate written agreements. The court correctly held that plaintiff's duty to pay for tooling would not be excused by defendants' default under the manufacturing agreement. There was no error in charging plaintiff with this item. ■ Plaintiff also contends that the allowance for pumps delivered and accepted was erroneous for the reason that defendants alleged that all pumps delivered had been rejected by plaintiff. The issue was tried as if it had been pleaded and appears to have been introduced by plaintiff under his claim of breach of warranty. He may not complain.

■ During the course of the work defendants received from plaintiff certain pump parts for which credits were given plaintiff by book entries and statements in the sum of $1,382.63. Plaintiff claims he should have had judgment for this amount. The court found that defendants did not purchase these parts and that plaintiff owns them. Plaintiff does not point out wherein this finding is without support in the evidence. The claim for this amount on the theory that defendants' statements amounted to an account stated was not established.

■ A final contention of plaintiff is that defendants were guilty of a conversion of the tooling and dies in that they refused to deliver them to him except upon payment of $19,-000, which was an exorbitant demand in view of their value of $2,590.76. Conversion of the property was not pleaded by plaintiff in either case; consequently there is no finding, except by implication. Defendants say the point was not raised at the trial. The briefs do not refer to the transcript of the evidence with respect to the claimed refusal by defendants to deliver the tooling unless they were paid the sum of $19,000. Defendants claimed in their pleadings damages of some $19,-000. There is no apparent reason for doubting their good faith

in making this claim. Certainly this alone would not support the claim of conversion. We cannot make an independent investigation of the reporter's transcript for evidence as to the alleged conversion. Under the circumstances we must hold the claim of conversion to be without merit.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied January 9, 1952, and appellant's petition for a hearing by the Supreme Court was denied February 21, 1952. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.