[Civ. No. 4670. Second Appellate District, Division Two.—June 3, 1927.]

ANNA R. MAHONE, Respondent, v. JOSEPH THOMPSON, Appellant.

[1] CONTRACTS—BUILDING CONTRACTS—PERFORMANCE—DAMAGES—INSTALLATION OF HARDWOOD FLOORS—FINDINGS—EVIDENCE.—In this action against a contractor by the owner for damages for failure to construct a building according to the plans and specifications, the evidence was insufficient to support the finding that defendant failed to nail down the hardwood floors properly or in good and workmanlike manner.

[2] ID.—CONSTRUCTION OF WINDOWS—EVIDENCE—FINDINGS.—In such action, the evidence was sufficient to support a finding that the windows leaked because of poor workmanship.

[3] ID.—DEFECTIVE OUTSIDE WALLS—EVIDENCE—FINDINGS.—In such action, a finding that the outside wall was not constructed in a good and workmanlike manner, or so as to be weather-proof, was supported by the evidence.

[4] ID.—CRACKS IN INTERIOR PLASTERING—DAMAGES—EVIDENCE.—In such action, the evidence was sufficient to support an award of damages for a crack in the interior plastering alleged to have resulted because it was not done in a good, workmanlike manner.

[5] ID.—COMPLETION OF BUILDING—EVIDENCE—FINDINGS.—In such action, the evidence was sufficient to sustain the finding that the completion of the building was delayed beyond the time specified in the contract.

[6] ID.—DELAY IN COMPLETING BUILDING—DAMAGES.—In such action, the trial court properly allowed the rental value of the premises as damages for delay in completing the construction within the period named in the contract.

(1) 9 C. J., p. 899, n. 31.   (6) 9 C. J., p. 811, n. 26.

APPEAL from a judgment of the Superior Court of Los Angeles County. Carlos S. Hardy, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Charles H. Adkins and E. C. Bowen for Appellant.

6. See 8 Cal. Jur. 832; 8 R. C. L. 491.

Earl Curtis Peck for Respondent.

JOHNSON, J., *pro tem.*—This is an action growing out of a building contract made March 17, 1920, between plaintiff as owner and defendant as contractor, which plaintiff asserted, and the court found, had not been duly performed by defendant. Judgment was rendered in plaintiff's favor for $815 as damages, and from that judgment defendant appeals.

Plaintiff's amended complaint alleges the making of the contract for the erection of a residence building, all the work of which, except heating and painting, was to be done by defendant according to plans and specifications of Frank O. Eager, architect, for the sum of $5,200. The contract provided that the work should be completed within 120 working days. Plaintiff avers, also, that defendant failed to construct the building according to the plans and specifications in numerous particulars; further, that completion was delayed; and that plaintiff has suffered damages in the sum of $3,000. In reference to some, but not all, of the defects specified, the court found that defendant had not complied with his contract, and particularly that he failed to nail down the hardwood floors properly, or to construct in workmanlike manner the windows and outside wall, or to plaster the house properly. In each of these matters the court assessed separately the damages sustained by plaintiff, in amounts aggregating $230. The court further found that there was delay in completion of the building beyond 120 working days, the time allowed by the contract, and that the contract was not in fact completed until April 1, 1921. For the delay the court fixed the damages at $585. Judgment having been rendered against him for a total of $815 and costs, defendant made a motion for a new trial, and upon denial of the motion appealed from the judgment.

Defendant contends that the evidence is insufficient to support the court's findings as to either the defects or the delay.

[1] In regard to the hardwood floors, the court found that defendant failed to nail them down properly or in good and workmanlike manner, and assessed the damage at $60. The defendant contends that the evidence shows that these floors were properly nailed, but that they buckled because

the plans prepared by plaintiff's architect did not provide sufficiently for ventilation. Defendant's contention on this point is correct. Plaintiff testified that the buckling occurred in the dining-room and in part of the living-room at the north side of the house, where there was no ventilation, and that this lack of ventilation was the cause of the buckling. Likewise, Irwin Beatty, a building contractor who was called by plaintiff as a witness, testified that the floors were laid right, but that the buckling was due to lack of ventilation on the north side of the house, and that any floor, no matter how well nailed, would buckle if there were not ventilation beneath. He put the expense of repairing the floor at $60 to $65; and the court in its finding evidently adopted his estimate. Defendant testified that he followed the plans and specifications, which did not call for ventilators on the north side, and that the floors were nailed in the usual way at intervals of eight inches. He did not see the floors after they buckled, and the court would not allow him to express an opinion as to the cause of the buckling. The contract and specifications are included in the record on appeal, but not the plans. The testimony of the witnesses mentioned comprises all the evidence in relation to the hardwood floors, and such being the state of the record, it is apparent that there is no support for the court's finding that defendant failed to nail down the hardwood floors properly or in good and workmanlike manner. The allowance of $60 for this item is therefore not sustainable.

[2] As to the windows, the court found that they leaked because of poor workmanship. The defendant contends, however, that the leaks were due to defects in the architect's plans. Plaintiff testified that the leaks occurred where the frames were set into the hollow tile, and that for want of proper filling beneath the frames, openings were left through which water leaked into the interior and damaged the walls and wall-paper. The witness Irwin Beatty corroborated plaintiff's statement, and placed the damage at $75, as found by the court. There was some conflicting testimony on behalf of the defendant, but the testimony adduced by plaintiff is sufficient to support the court's finding.

[3]   Concerning the outside wall, the finding of the court is that the wall was not constructed in a good, workman-like manner, or so as to be weather-proof, in consequence of which water leaked through, to plaintiff's damage in the sum of $75.   The specifications prescribed the mixture for the outside walls and the finishing coat, the component parts of which were to be combined "in the proper proportions to make weather-proof."   Plaintiff testified that the outside wall showed small cracks all over the house, that water came in everywhere, and that the plaster was not weather-proof.   Her witness Irwin Beatty testified that there were spots in different places where the water had soaked through the outside walls and had damaged the wall-paper in two rooms; and that this was due to seepage through the tile, stucco, and plaster.   He fixed the expense of proper water-proofing at $75, and this amount was accepted by the court in its finding.   The defendant in his testimony did not deny that the walls were not water-proof. He said merely that he used the material specified, and put the mixture on with the usual thickness and in the usual manner.   Similar testimony was given by the plasterer who did the work; but he said also that leaks might be caused by shrinkage of green lumber.   The testimony on behalf of the defendant does not afford sufficient ground for disturbing the court's finding.

[4]   Another defect specified was in the interior plastering, which, the findings state, cracked, owing to the fact that the plastering was not done in good, workmanlike manner.   The damage awarded for this item is $20.   Plaintiff testified to cracks throughout the house, and spoke particularly of a crack about one-eighth of an inch wide in some places, which ran the entire length of the house through the ceiling of several rooms, from east to west. She testified also that the plastering had popped in various rooms.   Concerning the large crack, the witness Beatty said that the only explanation he could give was that there was faulty construction, either in using damp lumber or in some other way, whereby the wood partition was caused to start away from the tile and the outside wall.   He said also that in a house properly built the plastering might check, but not crack open to the extent of an eighth of an inch.   He testified further that he noticed what he called

blisters in some of the unpapered rooms, and that such blisters or popping should be fixed in order to make a first-class job. Defendant admitted that there were blisters and cracks, but stated that the plaster was mixed and applied in the usual manner. In this he was corroborated by the plasterer; but neither that witness nor the defendant himself attempted any explanation of the large crack running through the entire length of the house. The court's award on this item finds ample support in the evidence.

[5] The only remaining item is that of the allowance for delay in completion beyond the period of 120 working days named in the contract. By amendment to the complaint made at the trial, plaintiff alleged that defendant did not complete his contract until April 1, 1921; and the finding accords with this averment. Defendant contends that he completed his work by August 28, 1920, but admits that the plumbing and electric wiring, which were included in his contract, still remained to be done at that time, and that thereafter certain finishing work would be required. His testimony as to the actual time of completion is of the vaguest character, his memory being so weak that he was unable to state even the month. There was never any certificate of acceptance; but plaintiff testified that the architect came to her in November, 1920, with bills for materials to be paid, and that she refused to accept the house as completed and made objection to the leaky walls and windows. She testified further that when she examined the house she found that the thresholds were not in, the front door was without hinges, and the garage doors without lock, and other hardware which she had furnished was not in place. It appears that defendant did some further work in December, but still there remained carpenter work to be performed; and after waiting until March plaintiff hired other workmen to do what defendant had left undone, and these men continued work until some time in April. Plaintiff testified that she did not enter into actual occupancy until some months later. [6] The court accepted the plaintiff's testimony; and as damages for delay allowed the rental value of the premises to April 1, 1921, at the rate of $75 per month, which amount, according to uncontradicted testimony, represents the fair rental value at the

time.   The evidence justifies the action of the court in respect of the delay in completion.

The amount of $60 awarded for the hardwood floors should be deducted from the judgment, reducing it to $755; and as thus modified the judgment is affirmed.

Works, P. J., and Craig, J., concurred.