[Civ. No. 24966. Second Dist., Div. Three. Aug. 9, 1961.]

CORONET CONSTRUCTION COMPANY, INC. (a Corporation) et al., Respondents, v. E. M. PALMER et al., Defendants; CONSUMERS TRANSPORTATION CORPORATION (a Corporation) et al., Appellants.

[Civ. No. 24967. Second Dist., Div. Three. Aug. 9, 1961.]

CONSUMERS TRANSPORTATION CORPORATION (a Corporation), Appellant, v. E. M. PALMER et al., Respondents.

Matranga & Abrams for Appellants.

Bennett J. Cravitz for Respondents.

BISHOP, J. pro tem.*—These two cases were tried together; the plaintiff in the second, is one of the defendants

*Assigned by Chairman of Judicial Council.

in the first; and the issues are intertwined. It therefore seems well to consider them together.

The first action is for damages caused by the breach of a contract of March 3, 1958, allegedly entered into between the plaintiffs and the defendants. The second one was an endeavor by one who was a defendant in the first cause to foreclose a mechanic's lien. A judgment was entered, in the first case, awarding the plantiffs $37,504.20, and one decreeing that the plaintiff take nothing was entered in the second case. Defendants D. M. Patritti, Consumers Transportation Corporation, and Cee Tee Construction Company appealed from the first judgment and Consumers Transportation Corporation, the plaintiff in the second action, appealed from its judgment. We have concluded, in the first case, that the evidence fails to support the findings against defendant Consumers Transportation Corporation. As to the other two appealing defendants we are modifying the judgment by striking the provision for interest. We are affirming the judgment in the second case.

We will relate the facts of interest in the first case somewhat sketchily, mainly for background purposes. The plaintiffs owned a newly plotted tract of land in Encino, hilly country, well away from the center of Los Angeles City. In order to get the area to acceptable grades, some parts had to be cut down, some parts filled in and compacted. The defendants, or some of them, entered into a contract, in writing, with the plaintiffs whereby they (the defendants) undertook to do the work just referred to. They entered upon the performance of the contract; worked more than six months; were paid by the plaintiffs, directly, nearly $70,000 and in addition plaintiffs paid for defendants' benefit some $11,000. The defendants quit work before the job was completed and plaintiffs carried on, expending some $33,000 more to finish the work. It was to recover the damages that they suffered by reason of defendants' failure to complete their contract for the agreed contract price that the plaintiffs brought the first action.

Probably the most difficult question to answer, of those that confronted the trial court, was this one: What persons were bound by the contract? Beginning with the instrument itself, plaintiffs' Exhibit 1, we note that it was composed of a printed form which furnished the opening provisions and the conclusion of that agreed upon. To this printed form were attached two typewritten sheets, and, at one time, so the last

sentence on the typewritten sheets states, "said plans," quite essential to give the contract substance, "are attached hereto and made a part of this contract."

In its opening paragraph the contract declares that it is made and entered into ". . . by and between CORONET CONSTRUCTION CO., INC. . . . hereinafter called Owner and E. M. Palmer & Associates . . . hereinafter called Sub-Contractor." Thereafter, throughout the printed form, the references are to "Contractor" and "Sub-Contractor," none to "Owner." The typewritten pages, however, refer to "Owner" and "Contractor." Without doubt the trial court was justified in interpreting "Sub-Contractor" wherever it appeared as "Contractor," and understanding "Contractor" to mean "Owner," except where, in the typewritten pages, it did mean "Contractor."

The manner in which the contract was executed is of some guidance in answering the question: Whom did it obligate? Words can not as readily reveal the manner of execution so it is better seen:

IN WITNESS WHEREOF the parties hereto have hereunto set their hand the day and year first above written.

Address /6029 E. Main St LaPuente, Calif — CTC — CORONET CONSTRUCTION CO., INC.

6287 San Ramon/ Buena Park — By Barns J Buck CONTRACTOR

Telephone Ed 61224 EM Palmer + Associates JA 13923

Cont. License 95168-A

Comp. Ins.

By SUB-CONTRACTOR

We do not understand that appellants question plaintiffs' right to recover against such persons as the contract binds. The complaint alleged, the answers admitted by their silence, and it was found, that the five plaintiffs constituted a limited partnership, under the name of Coronet Encino Estates, of which the one first named was a general partner. While the contract was fashioned on one of the blanks used by the general partner as a contractor, it contained a recital that it was a general partner for Coronet Encino Estates, and we see no reason to doubt that the contract was executed by it on behalf of those who constituted the limited partnership, and that it was their contract, although not executed by the other four limited partners. (See *Schuman* v. *Beily* (1932), 128 Cal.App. 315 [17 P.2d 163].)

Now we turn to the question: Who were bound as "Sub-Contractors"; that is, which of the defendants are shown to have undertaken to do the work of excavating, filling and

compacting that the plaintiffs desired done? The trial court found that ". . . defendants, E. M. PALMER, EDWARD KIRK, D. M. PATRITTI, CEE TEE CONSTRUCTION Co. and CONSUMERS TRANSPORTATION CORP. joined together in a co-partnership and thereafter did engage in business . . . under the fictitious firm name and style of E. M. PALMER & ASSOCIATES" and that they ". . . undertook to perform and did perform a portion of the said grading and excavating services . . ." but that later they ". . . abandoned the project undertaken by them to be performed. . . ."

It is our function and purpose to see whether there is sufficient substantial evidence to support this finding. (*Scarbery* v. *Bill Patch Land & Water Co.* (1960), 184 Cal.App.2d 87, 105-106 [7 Cal.Rptr. 408, 419].) In part, the problem is a very simple one. Without a doubt, the evidence is ample that the project was both undertaken and abandoned. Beyond dispute, also, the evidence warranted the conclusion that there was a partnership composed of at least two of the defendants, that is, of the nonappealing defendants, Kirk and Palmer. Kirk had a lot of experience in work similar to that desired by the plaintiffs. He and defendant Palmer had been engaged in grading work and excavating work for some months before February 1958. He was known by many as Mr. Palmer. Indeed, care must be taken in reading the testimony to be sure that references to "Mr. Palmer" are not, in fact, references to defendant Kirk. Actually "Mr. Palmer" is a woman, who is a bit of a phantom in the case, but who personally signed the contract (plaintiff's Exhibit 1) according to Kirk's testimony. She and he, at least, undertook the task of grading, and ". . . were to split the profits, if any, on this job." As already noted, neither defendant Palmer nor defendant Kirk has appealed. Our purpose in touching upon the evidence respecting these two has been to establish the partnership that they, clearly, composed.

Defendant Kirk ("Mr. Palmer") was the most active, throughout, of any of the defendants. It was he who interested defendant Patritti in joining in the task of grading plaintiffs' property. He and defendant Patritti, according to Kirk's testimony at his deposition, reaffirmed at the trial, were to split the profits fifty-fifty. Where this left Mrs. Palmer we need not determine; she signed the contract of March 3d and so did Patritti, according to Kirk and Patritti himself. The Palmer "Associates" were at least two, to begin with, defendants Kirk and Patritti. Mrs. Palmer knew and approved

of Patritti's participation in the job, along with Kirk. If they made money they would split the profit some way.

 The theory on which defendant Patritti would escape liability is that he was eliminated from the contract after it was executed but before the work actually begun. There is testimony that one or two representatives of the Operating Engineers' Union threatened that if Patritti's men worked on the job ". . . you will never build a house on this subdivision" and that as a consequence it was later agreed between the plaintiffs and Kirk that he would carry on but Patritti would drop out.

The trouble with this version of events is that it was flatly contradicted by the two union representatives who were supposed to have threatened Patritti off the work. The defense testimony places their refusal to permit Patritti on the job as having been made early in March before the actual work began. They testified that they first appeared on the job in either April or May, at a time when work was under way. Their purpose was to collect some "back Health and Welfare" dues, they testified, a subject the defense witnesses said was not mentioned, at the time of the early March visits. Clearly, the trial court was warranted in concluding from this, and other conflicting evidence, that defendant Patritti was not eliminated from the "Associates," but shared their responsibility for abandoning the task they had undertaken to perform.

 This leaves for consideration the two defendants, Consumers Transportation Corporation and Cee Tee Construction Company. Defendant Patritti owned no stock in either corporation, but he was president of each of them at the time of the trial as well as in March 1958. His office, in March, was at 16029 East Main Street, La Puente, the address appearing on the contract of March 3d, followed by "-CTC-." The number "95168-A" on the lower left side of the contract was the contractor's license number of the Cee Tee Construction Company. Was the number placed on the contract by defendant Patritti? "Well, I don't know if I did or not. I couldn't say." he testified. In view of the things he did undertake to say, the trial court could well infer that he, who was the one most likely to know the number, did put it on. In the conversation Patritti had with Kirk about the undertaking upon which they agreed to embark together, he and Cee Tee Construction Company were to furnish some equipment. "Palmer and Cee Tee" would charge the respective equipment out

at hourly rates. Kirk told Patritti that he (Kirk) had no bond capacity, but "Cee Tee Construction" had. Along about the time these affairs were taking place, Cee Tee Construction Company and Kirk bought some equipment for investment purposes, but when the March 3d contract came up it was determined to use the equipment there. Patritti was "the responsible managing employee of Cee Tee Construction Company." The trial court had a substantial foundation for its determination that Cee Tee Construction Company was one of the "Associates."

We wish to clear away some underbrush before taking up the relation of defendant Consumers Transportation Company to the "Associates." Among the 11 headings of appellants' *Argument* in the opening brief, the second is "Respondent Failed to Prove a Written Agreement of Partnership and Failed to Prove That a Partnership Existed by Clear and Convincing Evidence, and Therefore It Was Erroneous to Find Appellants Partners With Kirk and Palmer." As to a written partnership agreement, there was none. Clear and convincing evidence of the existence of a partnership was essential to establish plaintiffs' case against the appealing defendants. (*Milstein* v. *Sartain* (1943), 56 Cal.App.2d 924, 932 [133 P.2d 836, 841]; *Swanson* v. *Siem* (1932), 124 Cal. App. 519, 523 [12 P.2d 1053, 1055].) Respondents, in their brief, call this a "novel theory." We do not agree. That is the nature of plaintiffs' burden. Whether or not the evidence was clear and convincing was a question, of course, for the trial court to answer, not for us. (See *Leming* v. *Oilfields Trucking Co.* (1955), 44 Cal.2d 343, 346 [282 P.2d 23, 25, 51 A.L.R.2d 107].) As we have indicated, we have determined that the evidence warranted the finding of the trial court that the defendants "joined together in a co-partnership," as to all the defendants other than Consumers Transportation Corporation.

We are in accord with the appellants that: the evidence was insufficient to support the conclusion that defendant Consumers Transportation Corporation was a partner of Palmer and Associates. Again we emphasize: our function is to determine whether or not there was a basis for concluding, by drawing inferences, it may be, that Consumers Corporation was one of the associates, we must be careful not to reason that we would have drawn other conclusions. In support of our position that we find no substantial evidence to warrant finding Consumers Corporation an associate, we are

unable, of course, to cite page and line; we can only say that in the 633 pages of the reporter's transcript and in the many exhibits we find no supporting evidence.

Our best approach, perhaps, is to examine the evidence that the respondents put forth in support of their confident statement: "Consumers Corporation was a party to the contract." They note that Patritti was president of both Cee Tee and Consumers Corporation. So he was, but this fact, by itself, is quite insufficient. Maybe the two corporations maintained identical offices at 16029 East Main Street, La Puente, as stated by respondents, but there was no evidence that they did, nor would it prove that each was a partner in every enterprise in which the other was engaged. There was testimony that in 1945 Cee Tee Construction Company was formed to take over all of the construction business formerly done by Consumers Corporation. If any pertinent inference is to be drawn from the fact thus established, it would be that in 1958 Consumers Corporation was not in the business undertaken by Palmer and Associates for plaintiffs. Consumers Corporation did transport equipment of Cee Tee and Kirk to the job, fairly early in March, and did supply the fuel and lubricant used on the job, until the job was abandoned, and the transporting charges were not rendered nor bills presented for the fuel until months later. Why not? Patritti explained the delay of the transportation charges was "because of the relationship between Palmer and Consumers," and his explanation of the delayed billing for fuel was that it was a "friendly deal." It could be that, without justifying the conclusion that Consumers Transportation Corporation was a partner with Mrs. Palmer for the purpose of doing the work that plaintiffs wanted accomplished.

The picture, according to respondents' argument, is capped "By applying a check made payable jointly to PALMER and CEE TEE to a fuel bill allegedly due CONSUMERS. . . ." No reference to the place in the transcript, where this final proof may be found, is given us, but we believe the check referred to is one of those included in plaintiffs' Exhibit 6, introduced without objection earlier in the trial. This check drawn by Coronet Encino Estates, was payable to "E. M. Palmer and Associates and CTC Corporation. . . ." The testimony of Patritti was that Mrs. Palmer had difficulty getting it accepted at her bank, so he took it to his bank, and the $2,000 that it called for was divided, $1,000 to Mrs. Palmer and $1,000 went to the account, not of Cee Tee Construction Company, but of

the Consumers Transportation Corporation, in payment of fuel oil that it had supplied. In these facts we fail to see any basis for an inference that the plaintiffs were indebted to Consumers Transportation Corporation or that the latter was a partner of Palmer and Associates. A supplier of fuel oil, yes. A creditor, therefore, no doubt. But a partner—more evidence was needed than appears.

■ There remain 10 points listed in appellants' argument, in their opening brief. First of all, they contend that there was no executed contract because the provision in the contract of March 3d that the job would be completed in not to exceed 60 working days was changed to "ninety 90" days, without Patritti's initials being put opposite the change. According to Kirk's testimony the change was made before the work started, made necessary by the delay due to rain. The change was made, for the benefit of Palmer and Associates, at the request of an associate. Escape from its burdens is not to be had by this avenue.

■ Appellants further urge that the lack of evidence that the articles of incorporation of the two appealing corporations permitted them to become partners, suffices to win them a reversal. However, there was no claim at the trial, nor proof of any lack of authority, and we read in *Universal Pictures Corp.* v. *R. Davidge Film Lab., Ltd.* (1935), 7 Cal. App.2d 366, 368-369 [45 P.2d 1028, 1029] : "A corporation may enter into a partnership if so authorized by its articles of incorporation. . . . There is nothing in the evidence to indicate that the corporation was not so authorized. The contract was for its benefit and, until the contrary be shown, it will be presumed that it was made in the proper exercise of its corporate powers."

■ One provision of the contract was that "Contractor shall begin work within forty-eight (48) hours after written notice to proceed has been received from the owner." The contractor did begin the work. He (they) cannot escape the consequences of an unauthorized abandonment of the work some months later by crying: "You never told us to begin."

■ We find appellants' next point equally untenable. Their contention that if there was an enforceable contract it was rescinded by the acts of the parties, depends for support upon an understanding of the evidence, and upon inferences drawn from it, quite contrary to the understanding had and inferences drawn by the trial court. ■ The time to argue the facts, as the appellants are doing, has long gone by. We

make the same observation respecting the added claim that plaintiffs violated the contract by assuming the responsibility for blasting the rock. Such testimony as this by Kirk is utterly disregarded: "I told him we hit rock and we might just as well go home and he [the president of the Coronet Construction Company] said: 'No, I will go ahead and order the dynamite out here, and I'll shoot it and you haul it.' So, I stayed and hauled it. I hauled all the rock and he shot it."

A procedural question is next on the list. The appellants claim to have been prejudiced by the amendment to the complaint permitted on the second day of the trial. By the amendment the Cee Tee Construction Company was added as a defendant—no pretense being made that it was the Doe Company already named—and the allegation was added that at all the times Patritti was purporting to act as a principal he was in fact acting for the two defendant corporations as their agent. The paragraph amended to encompass this allegation continued to contain the averment that each defendant was the agent of the codefendants, so the amendment was not really a new idea. Moreover, in his answer already long on file, Patritti had alleged that he had annexed his signature to the contract of March 3d, as the responsible managing employee of Cee Tee Construction Company. This answer was filed by appellants' present counsel. Somehow we are not persuaded that it was error to allow the amendment, or that it prejudiced the defendants in any way, if it could be said to have been an error. The trial court's finding that the appealing defendants were partners sufficiently covers the issues raised.

Another procedural error is claimed, the admission into evidence of plaintiffs' Exhibit 12, a letter written by counsel for defendant Palmer at the request of Kirk, addressed to the plaintiff Coronet Encino Estates. It can only be understood as an admission by Mrs. Palmer that she, at least, owed the plaintiff something, but disputed the amount, and made provision for paying $1,000 per month "in partial satisfaction of said claim" without prejudice "to determine the amounts due you." We are not concerned whether the acceptance of this letter was error, as to Mrs. Palmer, but do note that inasmuch as the compromise offered in no way affected her liability—which she admitted—but only touched on the amount claimed to be due, it was properly admitted as to her.

"Of course, evidence of efforts to compromise are not admissible . . . except to the extent that they contain admis-

sions against interest. . . ." (*Store of Happiness* v. *Carmona & Allen, Inc.* (1957), 152 Cal.App.2d 266, 273 [312 P.2d 1104, 1109].) The objection made, at the time the letter was offered, was that it was an offer to compromise, and that is the basis now made that it was error to admit it. ▮▮▮ There is no argument made that her admission of liability was not good as against her codefendants. However, if that contention were made, and we were convinced that it was, but should not have been, admitted against them also, so clear is the case against defendants Patritti and Cee Tee Construction Company that we have no doubt that the judgment would have gone against them, had the letter never been heard of. Under the circumstances, section 4½, article VI of our state Constitution forbids a reversal on this ground.

Appellants' next contention is that there was no substantial evidence to support the amount of damages awarded. They open their discussion of the point by stating: "In the trial court appellants objected that it would be hearsay and a conclusion to allow testimony of payment of a check by respondent to a bank in the sum of $500.00. . . ." Appellants have given us no clue by which we can locate the incident among the 633 pages of the transcript. ▮▮▮ As stated in *Leming* v. *Oilfields Trucking Co.* (1955), *supra,* 44 Cal.2d 343, 350 [282 P.2d 23, 31] : ". . . it is not the province of [a reviewing court] to search the record in order to ascertain whether it contains evidence which will support a contention made by either party to an appeal." If, as seems likely, we have discovered the incident to which the appellants refer, it had to do with one of several checks grouped together as plaintiffs' Exhibit 7, first of all marked for identification, one for $500 made payable to the Farmers and Merchants Bank, "to cover some of Mr. Palmer's checks." Counsel for the defendant, under the guise of asking questions under *voir dire,* drew from the witness, the president of the Coronet Construction Company, the answer that in "the case in each of these checks" he took the matter up with "Mr. Palmer" before issuing it, and that "Mr. Palmer" said "If you can pay it, it certainly will take the heat off of me." Again the witness answered "Yes, I did," to the question: "And you recall in each of these cases, before you issued the check, you took it up with Mr. Palmer personally?" This line of questioning was abandoned upon plaintiffs' objection that it was "improper voir dire," and statement that "I will get to that if you will permit me an opportunity." Rather extensive cross-

examination followed later after the 11 checks of plaintiffs' seven were admitted into evidence, but no more searching questions about the $500 check. If this is the matter complained of by appellants, it does not present a situation warranting a reversal

Appellants also argue that in the absence of a cross section made after the job was finished, it was impossible to say how much excavating had to be done, so as to have a basis for determining the contract price. The trial court could have concluded, from the evidence, that the total to be excavated and compacted could be determined in advance, and by comparing the completed job with the planned work, the total involved was ascertainable. Moreover we have in the two typewritten sheets, attached to, and a part of the contract of March 3d, these provisions: "10. Any change of grades or elevations that deviate from the approved plans and specifications that entail any additional yardage or quantities of material shall be paid for at the unit contract price. It is agreed that the present quantity of dirt to be moved as per the Los Angeles approved grading plan is 251,000 c.y. as determined by Delta Engineering Company, Reseda. . . .

"16. Approximately 251,000 cu. yd. lot and street excavation and compaction

@ 0.305 per cu. yd. $76,555.00

ie The exact quantities to be determined by the engineers, from cross sections of the excavated areas using the approved plans and topography maps for this tract. . . ."

The damages awarded were calculated by adding together three sums: that paid to the defendants directly; that paid, at their request, for their benefit; that expended by the plaintiffs in completing the job. From this total was subtracted the contract price as agreed upon. The figure remaining was the amount awarded.

 Under this same heading, however, that there was no substantial evidence to support the damages awarded, appellants have snagged a tenable point. They call attention to the fact that the judgment allows interest, upon the damages awarded, at 7 per cent from June 1, 1958. We see no justification for this allowance. Had the *defendants* completed the work on June 1, 1958, the amount due *them* would have been the contract price less what they had been paid, and the interest allowed would have run from that date. But this is not an action by the contractor for the balance due under the con-

tract, but by the owner for damages flowing from the breach of the contract. The complaint was not filed until December 30, 1958, and it discloses that at that date plaintiffs had not completed the work, but would be required to spend $4,500 more than the $28,650, already spent by them, toward the completion, between October 3 and December 30, 1958. Some of the sums spent for defendants' benefit were paid out after June 1, 1958. We find in the record no fact that makes June 1, 1958, a date with any significance for figuring interest— and respondents have not made any effort to explain why that date appears both in the conclusions of law and in the judgment.

 Not only was there no reason for starting the interest to run June 1, 1958, but plaintiffs' damages were unliquidated, so that no interest at all should have been included in the judgment. (*Kingsbury* v. *Arcadia Unified School Dist.* (1954), 43 Cal.2d 33, 43-44 [271 P.2d 40, 47].) The rationale of the rule is thus expressed in *Cox* v. *McLaughlin* (1888), 76 Cal. 60, 67 [18 P. 100, 9 Am.St.Rep. 164], as quoted in *Perry* v. *Magneson* (1929), 207 Cal. 617, 623 [279 P. 650, 652] : " 'The reason of such denial of interest is said to be that the person liable does not know what sum he owes, and therefore can be in no default for not paying. The damages in such cases are an uncertain quantity, depending upon no fixed standard, . . . and can never be made certain except by accord or verdict. As to such damages there can be no default, and hence the initial point at which to fix the starting of interest is wanting.' " Obviously, in the case under review, the defendants could not know, until the judgment fixed the amount, how much damages the plaintiffs had suffered, for in large measure it depended upon the sums the plaintiffs were required to spend in doing the work that the defendants had undertaken, but failed to do.

Having held that the evidence was insufficient to support the finding that the Consumers Transportation Corporation was a member of the defaulting partnership, *must* we conclude, as appellant urges us to do in the second case, that Consumers Transportation Corporation was entitled to foreclose its mechanic's lien? We think not. While the two cases were tried together, they were not consolidated; each has its own findings of fact and judgment. It is not either legally impossible or contrary to common sense that in such a situation the conclusions in one case may be inconsistent with those in the other. This comes about because, where findings are

not waived, they must cover every material issue in each case. What is the trial judge to do if he remains unconvinced how an issue should be resolved, as may happen when the only testimony is from discredited witnesses? He makes a finding against the party who has the burden of proof as to the issue (*Brooks* v. *Brooks* (1944), 63 Cal.App.2d 671, 674 [147 P.2d 417, 419]), and so he may make a finding in one case contrary to a finding in another, though both were tried at the same time.

In our second case, where Consumers Transportation Corporation is the plaintiff, seeking to foreclose a mechanic's lien, the trial court found ". . . that plaintiffs did not deliver certain goods, wares and merchandise consisting of gasoline or oil to defendants, or any of them, of the reasonable value of $7,011.02 or any other sum whatsoever or at all." In appellants' reply brief they complain: "Respondent contends the record shows a complete failure on the part of Consumers to prove the amount of its claim, but nowhere in its Brief does Respondent designate evidence in the record in support of such contention. Respondent again offers a conclusion without reference to specific documentation in the record to support the same." We were not surprised that the respondent, who claimed there was no supporting evidence, did not point to the page and line of the transcript, or to an exhibit, where the evidence was not, but we turned hopefully to the brief of the appellant, who contends that such evidence exists, to discover it. What do we find? "Consumers showed by substantial evidence that fuel and lubricants were delivered at the request of Kirk, acting as the agent or employee of Coronet, for use on the Coronet Encino Tract, and that Consumers was not paid in full for said materials. The finding of the trial court . . . was by reason of the foregoing unsupported by the evidence. . . ."

In our discussion of the first case we took the evidence most favorable to the findings of that case, and so wrote as though it were a fact that Consumers had furnished the fuel for the machines that worked on the job. Now, in the case where it is found that Consumers did not furnish the fuel, we must review the evidence from a different viewpoint. We would be justified, by the utter lack of assistance given us by the party who claims that there is supporting evidence, in leaving the matter where he has left it—unsupported. But we add: the trial court may have not been convinced that the fuel, always delivered by one of the trucks of Union Oil Company or

Standard, was in fact being delivered on the credit of or by Consumers. There was no evidence—which has come to our attention—of any deal made between Consumers and either major oil company. The trial court found against the allegation of whose truth it was not convinced.

Lastly, appellants are aggrieved that the trial court did not grant them a new trial because of their affidavit "that Berck, a material witness, was by Cravitz prevented from being present at the trial." Respondents' answer to this (that the order is nonappealable), is, of course, no answer at all. To be sure, an appeal does not lie, in a civil case, from an order denying a new trial (*Rodriquez* v. *Barnett* (1959), 52 Cal.2d 154, 156 [338 P.2d 907, 908]), but it is reviewable on the appeal from the judgment (*Bank of America* v. *Lamb Finance Co.* (1960), 179 Cal.App.2d 498, 507 [3 Cal.Rptr. 877, 883]). However, here, as in other instances, the appellants have given us no assistance. There is nothing in the record before us to support the premise of defendants' argument or to reveal wherein they suffered any prejudice.

For the reasons given we take these actions:

(1) The appeals from the nonappealable orders denying defendants' motion "to vacate" and grant them new trials, are dismissed.

(2) The judgment in the case of *Coronet Construction Company, Inc., et al.* v. *E. M. Palmer, et al.,* is: (a) reversed as to Consumers Transportation Corporation; (b) modified by striking therefrom the words and figures "with interest thereon at the rate of 7% per annum from June 1, 1958" and as so modified it is affirmed as to the defendants other than Consumers Transportation Corporation.

(3) The judgment in the case of *Consumers Transportation Corporation* v. *E. M. Palmer, et al.,* is affirmed.

(4) Consumers Transportation Corporation shall have its costs on appeal in the case first mentioned; the defendants shall have their costs of appeal in the case last mentioned; except as just ordered, each party shall bear its own costs of appeal.

Shinn, P. J., and Ford, J., concurred.

Petitions for a rehearing were denied September 5, 1961, and the petition of appellants Consumers Transportation Corporation, Cee Tee Construction Company and D. M. Patritti for a hearing by the Supreme Court was denied October 4, 1961.