[Civ. No. 9585. Fourth Dist., Div. One. July 31, 1970.]

A. A. BAXTER CORPORATION, Plaintiff and Respondent, v. COLT INDUSTRIES, INC., et al., Defendants and Appellants.

148

## COUNSEL

McInnis, Fitzgerald & Wilkey and Laurence L. Pillsbury for Defendants and Appellants.

Gray, Cary, Ames & Frye, J. Clifford Wallace, F. P. Crowell and Timothy V. McFarland for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**—A. A. Baxter Corporation (plaintiff) brought this action to recover damages caused because defendants, Colt Industries, Inc. (Colt), a corporation, Fairbanks Morse, Inc., a corporation (maker), and Fairbanks, Morse & Company, a corporation (lessor) failed to deliver a truck scale according to a delivery schedule contained in a lease between lessor and plaintiff as lessee.

Plaintiff is a contractor which on August 4, 1966 knew that a corporation known as Dicco was low bidder on a bid submitted that day to the State of California (State) for construction of a nine-mile stretch of highway east of Barstow.

Plaintiff had earlier received a letter from Dicco that plaintiff would receive a subcontract from Dicco, a part of which would entail hauling borrowed earth according to weight.

Plaintiff's contract with Dicco was executed August 30, 1966, for a total of $1,213,832.50, of which $522,000 was for earth to be imported by weight in the quantity of 1,800,000 tons.

It may be assumed it was plaintiff's obligation to establish the weight

of earth furnished, which required the installation of a truck scale at the job-site. The scale was not mentioned in either the prime contract or the subcontract so far as may be determined from the record.

Between August 4 and August 15, 1966, Malloy, an officer of plaintiff, negotiated with Thompson, an agent of the three defendants, to obtain a truck scale, which Malloy knew to be manufactured by maker, which could weigh a load of 325,000 pounds. The scale itself weighed 78,000 pounds. Malloy informed Thompson that plaintiff would be prepared to commence work on September 19. While at the time of their conversations the prime contract had not been awarded, an event that usually followed by two or three weeks the opening of bids, plaintiff was willing to go ahead at its own risk, a procedure permitted by State in connection with such projects.

Thompson was informed also that plaintiff would bring to the job-site, in preparation for commencing operations on September 19, equipment of the value of $1,000,000 to $1,500,000; mention was made also of penalty provisions for delay in the contract, without mention of any figure. The prime contract contained a provision for payment of $875 per day for failure of the prime contractor to complete within 200 working days. Plaintiff's contract was to reimburse Dicco for penalties imposed on the latter because of plaintiff's failure not caused by the acts of others.

On August 15 Thompson informed Malloy he had received word from the maker a scale would be produced and ready for shipping in three or four weeks, with an estimated week in transit.

On August 15 Thompson furnished Malloy with estimates of price for the sale of the scale and for its rental. Two order forms were filled out and were signed by Malloy, one to buy, the other to lease. Each contained this language: "to be shipped to be on job week of Sept. 19th" and "ship by truck hot line." The latter method of shipment was suggested by Thompson as being faster than by rail and an additional $250 was included in the sale price and total rental price respectively for that method of transportation.

The face of the order incorporated by reference terms on the back of it which included the following in bold-face capitals: "The company nowise assumes any responsibility or liability with respect to use, purpose, or suitability, and shall not be liable for damages of any character, whether direct, indirect or consequential, for defect, delay, or otherwise, its sole liability and obligation being confined to the replacement in the manner aforesaid of defectively manufactured guaranteed parts failing within the time stated."

Plaintiff decided to lease rather than buy, and the purchase order for a proposed sale was returned to it.

A formal written lease, dated August 19, 1966, covering the scale was executed on August 22. That part of it which is specific to the equipment and terms shows a lease for 36 months commencing October 15, 1966. It too contained a limitation of liability and another clause excusing delay caused by carrier.

The scale was ready for shipping from maker's East Moline, Illinois factory on September 20 and was delivered on that date to a rail carrier, rather than to a trucker, because the maker was informed the width of the scale made it impossible to be accommodated by a truck on the highway without obtaining many special permits. It was later discovered that delivery by truck would have been possible.

The scale arrived at the railhead near the work site on October 1, and plaintiff undertook to move it to the job-site by truck.

Lessor had undertaken the assembly and installation of the scale at the site prepared by plaintiff. That was completed on October 6, one day's delay having been occasioned by a breakdown of plaintiff's equipment used in moving the scale. The scale was then ready for use on October 7.

Plaintiff by September 19 had brought to the job-site numerous pieces of equipment and certain of its personnel.

The equipment brought by plaintiff to the operations site before the end of the week of September 19 came from two other locations: Patterson, in Tuolumne County and Desert Center, near Blythe. The job near Desert Center had been completed; the job at Patterson was not completed until October, but the bringing of equipment from there caused neither loss nor delay on that job. Equipment from Patterson began to arrive at the job-site on September 8, from Desert Center on September 6.

Plaintiff sought to recover the amount of damage caused by the delay from the end of the week of September 19 to October 7. That damage it claimed consisted of the salaries of three employees and the rental value of the equipment that remained idle.

The prime contract contained a schedule of amounts State agreed to pay the prime contractor per hour for equipment idled at the instance of State. The figures so listed were used by the trial court to fix the amount of damage, in addition to payments made by plaintiff to employees.

The court rendered judgment in favor of plaintiff for $17,464, calculated as for the loss of eight working days, plus interest of $1,222.48 (from September 19, 1967).

No penalties were charged to plaintiff under its contract. Any delay in the completion of the overall project was caused by another subcontractor.

## Theories of Recovery

The complaint is in four causes of action. The first is for alleged breach of the leasing agreement that the scale would be on the job in operating order by the week of September 19; it alleged also that plaintiff would not have entered into such purchase order but for the representation and warranty as to date of delivery; that plaintiff communicated to defendants that a prompt and timely delivery was necessary in order to coordinate the moving of plaintiff's equipment to the job-site to coincide with the arrival of the scale so as to avoid costly idle time for the large number of men and large amount of expensive earth-moving equipment involved; that defendants were aware of all those facts and circumstances and the reasons for plaintiff's time requirements; and that plaintiff was relying upon the delivery date as represented and warranted by defendants, who were aware that plaintiff was moving its men and equipment to the place of delivery and the job-site, in view of the strict time requirements of plaintiff's contract with Dicco.

■ We have concluded the pleadings and proof sustain only a cause of action for breach of the contract provision for delivery by a certain date. For reasons we discuss hereafter, theories of warranty and negligent misrepresentation are inapplicable.

An amendment alleged that on November 18, 1966 plaintiff made demand by letter upon two of the defendants for payment of damages.

## Findings

The court found to be true the matters alleged as to breach of the contract provision for delivery in the week of September 19 and as to the conditions with knowledge of which the contract was made; found that during the negotiations for said scale plaintiff communicated to defendants the strict time requirements of the prime contract with State, to which plaintiff was bound by the subcontract calling for a penalty per calendar day for all delays in completing the contract.

It was found that the formal lease dated August 19 was merely a security agreement; that plaintiff was ready to commence work on the promised delivery date, but about that time was informed delivery would be late; that eight days' delay was caused to plaintiff to its damage in the sum of $17,464.

The court found additionally that plaintiff would not have entered into

said purchase order with said defendants but for defendants' promise of timely delivery; that time was the essence of the bargain; that at the time of the making of the contract, defendants were well aware of all the facts and circumstances involved; that the freeway contract between the prime contractor and State provided for the measure of damages in the event State caused delay on the job and that these standby rates were reasonable under the circumstances and were a proper measure of plaintiff's damage for the delay caused by defendants.

Among the conclusions of law are these: "4. Defendants made negligent misrepresentations to plaintiff concerning timely delivery which were reasonably relied on by plaintiff and were the proximate cause of plaintiff's damages . . .

"5. The printed limitations of liability contained on the reverse side of the purchase order were not within the contemplation of the parties and were inconsistent with handwritten delivery promise language on the face of the agreement. The handwritten provisions control and constitute the agreement of the parties on said issue."

### CONTENTIONS ON APPEAL

Defendants attack the holding the provisions limiting liability were not within the contemplation of the parties and do not protect defendants; they claim the evidence and findings are insufficient as a matter of law to support an award based upon breach of warranty, are insufficient to support an award on the basis of negligent misrepresentation, or to support the conclusion defendants were legally responsible for eight days' delay; they claim error in the measure of damages and in the award of interest.

### DISCUSSION

■ Whether the provision on the back of the purchase order, when considered with the specific provision for a delivery date and with the surrounding circumstances, was intended to exempt defendants from consequential damages for delay in delivery was a mixed question of law and fact which the trial court has resolved in a reasonable manner. Such a question may be one of fact. (*Hawley* v. *Orange County Flood etc. Dist.,* 211 Cal.App.2d 708, 717 [27 Cal.Rptr. 478].)

Such contractual substitutes for an award of damages for delay are not in every case given an unrestricted effect. (See *Hensler* v. *City of Los Angeles,* 124 Cal.App.2d 71 [268 P.2d 12]; *McGuire & Hester* v. *City etc. of San Francisco,* 113 Cal.App.2d 186 [247 P.2d 934]; *Milovich* v. *City of Los Angeles,* 42 Cal.App.2d 364 [108 P.2d 960].)

To classify the promise of a time of delivery of personal property as a warranty and the failure to make timely delivery as a breach of warranty is meaningless.

It is true that section 2313, subdivision (1)(a), Commercial Code, states an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain. . . ." A warranty has to do with title, character, quantity, quality, identity or condition of goods.[1]

In considering a claim that a provision of a contract of sale excusing delay in delivery of a machine protected the seller from damages for breach of warranty, the court said, in *Chamberlain Co.* y. *Allis-Chalmers Co.,* 51 Cal.App.2d 520, 526 [125 P.2d 113]: "This provision constitutes a separate paragraph of the contract, and it is clearly directed at one subject only, that is, delays in performance by defendant that are 'unavoidable or beyond the reasonable control of' defendant. A breach of warranty is not a delay . . ."

Conversely, a delay in delivery is not a breach of warranty.

The theory that plaintiff entered into the contract in reliance upon defendants' representation delivery would be made in the week of September 19 has as a corollary that but for such representation plaintiff would not have entered into such contract.

Plaintiff, however, neither pleaded nor proved that the contract as made, which itself calls for the same time of delivery, was not the contract it desired, or that the scale sold was not the one it wanted, or that the contract as made was otherwise disadvantageous.

It seems clear that the adoption of a theory of warranty as to the time of delivery gave rise to a theory of negligent misrepresentation as a cause of action.

■ A warranty is as much one of the elements of sale and as much a part of the contract of sale as any other portion of the contract and is not a mere collateral undertaking. (*Calpetro Producers Syndicate* v. *C. M. Woods Co.,* 206 Cal. 246, 251 [274 P. 65]; *Rutherford* v. *Standard Engineering Corp.,* 88 Cal.App.2d 554, 565 [199 P.2d 354].)

■ There is a definite distinction between a fraudulent representation and a warranty. A fraudulent representation is an antecedent statement made as an inducement to the contract, but is not a part or element of

---

[1] "[T]he whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell. . . ." Comment to section 2313, Commercial Code.

the contract. On the other hand, to constitute an express warranty, the statement must be a part of the contract. (*Griswold* v. *Morrison,* 53 Cal. App. 93, 99 [200 P. 62].)

Of course, where active fraud has induced a written contract which does not deal with the details concerning which the fraudulent misrepresentations were made, the contract will not be enforced. (*Ferguson* v. *Koch,* 204 Cal. 342 [268 P. 342, 58 A.L.R. 1176].)

Here, however, the claimed misrepresentation became the clause of the contract for the breach of which plaintiff sues.

If plaintiff may recover on the theory of breach of contract, its claim based upon misrepresentation is eliminated·

No attempt was made to show that but for entering into the contract plaintiff could have obtained a similar scale elsewhere for the desired delivery date.

It is not claimed that reliance upon the claimed misrepresentation induced plaintiff to enter into its contract with Dicco, which was the real cause of plaintiff's moving its equipment to the scene of operations, although because of the promised date of delivery it may have moved its equipment there earlier than it otherwise might have done.

Likewise, there was neither allegation nor proof that plaintiff's expense incident to ownership and maintenance of equipment was any greater at the Newberry site than at the Patterson and Desert Center sites from which it had been brought.

█ The findings as to negligent misrepresentation and breach of warranty are *not supported by the evidence and lend no support to the* judgment.

## Measure of Damages

█ It is undeniable that plaintiff bore the expense of having men ready to work on a certain date who were kept idle and that there was idle equipment at the job-site. The questions are whether damages should be awarded for the time of salaried employees whose salary would have been paid whether they were there or elsewhere, and for idle equipment which would not have been used elsewhere, or rented, and, if so, how much damages were suffered.

Remarks made by the court throughout the trial indicate the view that plaintiff was entitled to be compensated for the non-use of its equipment and men regardless of those matters.

The court not unreasonably found defendant was liable for damages reasonably within the contemplation of the parties. The court then found that the provision of the contract between State and Dicco providing hourly rates of compensation for delay contractually caused by State afforded the proper measure of damages and that such rates were reasonable.

■ The general rule as to consequential damages for breach of contract is stated in *Hunt Bros. Co.* v. *San Lorenzo etc. Co.,* 150 Cal. 51, 56 [87 P. 1093]: "It is the well-settled general rule of damages for any breach of contract that the damages that can be recovered for a breach are only such as may reasonably be supposed to have been within the contemplation of the parties at the time of the making of the contract, as the probable result of a breach. . . . This rule does not mean that the parties should actually have contemplated the very consequence that occurred, but simply that the consequence for which compensation is sought, must be such as the parties may be reasonably supposed, *in the light of all the facts known, or which should have been known to them,* to have considered as likely to follow, in the ordinary course of things, from a breach. . . ."

■ In the case at bench the circumstances known to the parties were found by the court to be the time requirements of the prime contract (with State), the provision of that contract for a daily penalty for delay in performance, the fact that plaintiff was to commence operations on September 19, that plaintiff was relying upon defendants' faithful performance as to delivery and was moving men and expensive equipment to the job-site in reliance thereon.

The specific matters in contemplation were a contract provision for daily penalties in favor of State, none of which was assessed,[2] and the idleness of machinery and men, the machinery having been said to be worth $1,000,000 or more.

The schedule of rates accepted by the court was arbitrarily selected by plaintiff as the measure of its damages.

There is a copy of a part of the prime contract in evidence. It includes the schedules from which plaintiff's witness Malloy had prepared a summary of the "Equipment Rental" rates and "Right of Way Delay" factors for each classification of equipment. That part of the partial contract directs attention to the provisions of the standard specifications concerning "Equip-

---

[2]As to a penalty clause in a master contract between owner and general contractor as being within contemplation of a subcontractor, see *Ely* v. *Bottini,* 179 Cal.App.2d 287, 294-295 [3 Cal.Rptr. 756].

ment Rental" and "Right of Way Delays." Those provisions were not before the court.

The testimony of plaintiff's witness was that in general the equipment rental rates in the prime contract were reasonable. The real problem, however, is whether such rates or the right-of-way delay rates based upon them afford the proper measure of damages when there has been no loss of potential rents, no loss under the construction contract caused by the delay, and no loss of profits, either on that job or on any other job as a result of the delay.

The use of a schedule adopted generally by contractors in determining the cost of use of equipment, as a custom of the trade, which was presumably within the contemplation of the parties, has been approved. (*Grand Trunk Western R. Co.* v. *H. W. Nelson Co.,* 116 F.2d 823, 838.)

Also found reasonable has been the use of the Associated Equipment Distributors' "Compilation of Rental Rates," where the loss of full rental value was the proper measure of damages. (*Studer* v. *Rasmussen,* 80 Wyo. 465 [344 P.2d 990].)

When the leasing of the scale was under discussion no mention was made of standby rates that State might by contract be obliged to pay.

There was no evidence the schedule of such rates in the prime contract was according to a custom in the trade, or that there was any such custom.

Damage connotes loss. (*Keller* v. *Hiers,* 108 Cal.App.2d 424, 429 [239 P.2d 6]; *Connell* v. *Harron, Rickard & McCone,* 7 Cal.App. 745, 746 [95 P. 916].) No relationship appears between a provision of the prime contract allowing payment for a contracted-for delay and the actual loss suffered by plaintiff.

Defendants did not have the relationship of a subcontractor or materialman to the overall project covered by the prime contract.

The provisions of the prime contract except insofar as they provided for a daily penalty against Dicco were not within the contemplation of both of the parties to plaintiff's accepted offer to lease.

For what reasons and upon what notice State might exercise the contractual right to delay operations, and for how long a time, does not appear.

A question by Baxter's counsel indicated that the delay provided for might have been such an occasion as the Governor's going through and inspecting a roadway.

It may be that during such a temporary halting of work the contractor would be obligated to pay an operator. For that expense no additional pro-

vision is made in that portion of the prime contract before the court. It may be, therefore, that the right-of-way delay schedule covered also wages of an operator.

The unreasonableness of the application of such an hourly rate to a period of eight days is emphasized by the testimony of plaintiff's witness Malloy that the standby rate under the prime contract for a certain piece of equipment when not in use was $27 per hour; that the depreciation rate for the same piece of equipment when in use was $15 per hour.

What was said by a Texas court has some point: "[T]he proper method of proving rental value of property detained for a long period of time is not by the day, week or month, but for the entire period of time during which use of the property has been withheld." (*Page* v. *Hancock* (Tex.Civ. App.) 200 S.W.2d 421, 424.)

In *Burrell* v. *Southern Cal. Canning Co.*, 35 Cal.App. 162, 166 [169 P. 405], in which a claim was made certain machinery was defective thereby causing non-use of a packing plant, the court said: "This amount of damage was arrived at by alleging that the investment exceeded one hundred thousand dollars, and that the rental value was ten thousand dollars, and that by reason of these facts the defendant was deprived of the use and benefit of its investment to the extent of two-thirds thereof, and to its disadvantage in the sum of $6,666.66.

". . . such damages were remote and speculative, and were such as were not anticipated or contemplated by the parties when making the contract as the probable result of its breach."

We conclude the hourly rate for delay contracted for by State and Dicco was not the proper measure of damages between the parties to this action. It remains to be considered what is that proper measure.

■ The assessment of damages for breach of a contract to produce a specified product permits that: "[f]or any delay in the completion fairly chargeable to the builder, the plaintiff can get judgment for the value of the use of the product, if it was being constructed for use . . ." (Rest., Contracts, § 3461(1)(b), p. 573.)[3]

■ The damage claimed by plaintiff was not such as arises from the delay of a contracting party in the production of that contracted to be produced, that is, the rental value of that product during the period of delay;

---

[3]The Restatement rule has been applied in California where the owner of a building, because of the builder's delay, has lost rents that would have been paid under leases already entered into. (*Dunne Inv. Co.* v. *Empire State S. Co.*, 27 Cal.App. 208, 222 [150 P. 405]; cf. *Mahone* v. *Thompson*, 83 Cal.App. 561 [257 P. 127].)

and no attempt was made to show the value of the loss of use of the scale itself, since such measure of damages would have been inadequate. It may be inferred there was no available market in which another might have been obtained.[4] The usual measure of damages, therefore, would not apply, i.e., rental value of the scale, or difference in the cost of a satisfactory substitute. Knowledge that failure to deliver as agreed would be likely to delay plaintiff in its construction work and cause serious damage was within the contemplation of the parties. (*Gulf States Creosoting Co.* v. *Loving,* 120 F.2d 195, 202.)

There are two classes of cases that sufficiently resemble the case at bench so as to make reasonable a consideration of their rules for the measurement of damages: (a) where a party to a construction contract is delayed or halted in the commencement or performance of the contract by the fault of the other party, or an owner suffers damage because of a contractor's delayed performance; and (b) where a reasonable outlay in preparation for performance has been made by one whose performance has been wholly prevented.

In the first class of cases, loss of rental value of equipment as an element of damage is proper where such equipment has been idled as the result of delay caused by a contracting party and there is evidence the equipment could otherwise have been rented, or used profitably by the owner. (*Studer* v. *Rasmussen, supra,* 344 P.2d 990, 999-1000; *Grand Trunk Western R. Co.* v. *H. W. Nelson Co., supra,* 116 F.2d 823, 838-839; *Town & Country Engineering Corp.* v. *State* (Ct. Cl.) 46 N.Y.S.2d 792, 804; *Gulf States Creosoting Co.* v. *Loving, supra,* 120 F.2d 195, 204; *Taylor* v. *Sturm Lbr. Co.,* 90 W.Va. 530 [111 S.E. 481, 483].)

Overhead expense allocable to the period of delay is allowed to the extent the evidence shows an increase in overhead because of the breach (*Allen* v. *Gardner,* 126 Cal.App.2d 335, 344 [272 P.2d 99]; *Royal Pioneer Paper Box Mfg. Co.* v. *Louis De Jonge & Co.,* 179 Pa.Super. 155 [115 A.2d 837, 842]); or where other jobs, but for the delay, would have been obtained to absorb such overhead. (*General Ins. Co. of America* v. *Hercules Constr. Co.,* 385 F.2d 13, 22-23; *Kansas City Bridge Co.* v. *Kansas City Structural Steel Co.* (Mo.) 317 S.W.2d 370, 377.)

Ownership expense which includes overhead but is a broader term, including, also, job-site costs (*General Ins. Co. of America* v. *Hercules Constr. Co., supra,* 385 F.2d 13, 22-23) is properly allowed for such delay (*Grand Trunk*

---

[4]In the absence of an available market, the measure of damages " 'is the loss directly and naturally resulting in the ordinary course of events" for breach of a contract to sell and deliver goods. (*Walpole* v. *Prefab Mfg. Co.,* 103 Cal.App.2d 472, 481 [230 P.2d 36].)

*Western R. Co.* v. *H. W. Nelson Co., supra,* 116 F.2d 823) when the proof shows the equipment could have been used profitably elsewhere except for the delay (*Gulf States Creosoting Co.* v. *Loving, supra,* 120 F.2d 195, 204).

Outlays for job-site costs are those necessarily incurred in supervising, maintaining and servicing construction. (*General Ins. Co. of America* v. *Hercules Constr. Co., supra,* 385 F.2d 13, 22-23.)

The monthly cost to the contractor in keeping its equipment and organization together during a delay in the course of construction was allowed in *Camarco Contractors, Inc.* v. *State,* 40 Misc.2d 486 [243 N.Y.S.2d 240]; and compensation for loss of time of the contractor personally in *Saldal* v. *Jacobsen,* 154 Iowa 630 [135 N.W. 18]).

In the case at bench construction had not commenced and there were no such costs, although the presence of the supervisorial crew was in preparation therefor; the equipment was not hired by plaintiff, but was owned. It was brought there from sites where it was no longer needed. There was no evidence it would or could have been used elsewhere or could have been rented if it had not been brought to the job-site.

For that reason a measure of damages based upon rental value of the equipment, or upon overhead except as limited to the equipment itself and to attendant personnel would be improper.

Damages suffered by a contractor because of delay caused by failure of the other party to a construction contract have been allowed in *Hensler* v. *City of Los Angeles, supra,* 124 Cal.App.2d 71; *McGuire & Hester* v. *City etc. of San Francisco, supra,* 113 Cal.App.2d 186, 192; *Milovich* v. *City of Los Angeles, supra,* 42 Cal.App.2d 364, 376; in none of which is the measure of damages discussed.

A proper measure of damages caused by delay in the performance of a construction contract has been held to be a reasonable rate of interest for the period of the delay on the amount invested at the time of the breach. (*Stubblefield* v. *Montgomery Ward & Co.,* 163 Ore. 432 [96 P.2d 774, 98 P.2d 14, 125 A.L.R. 1228]; *Cincinnati & C. Traction Co.* v. *American Bridge Co.,* 202 F. 184.)

In the second class of cases, those where there has been a reasonable expense in preparing for a performance that has been prevented, the rule has been stated in *Buxom* v. *Smith,* 23 Cal.2d 535-541 [145 P.2d 305]; *Navarro* v. *Jeffries,* 181 Cal.App.2d 454, 460 [5 Cal.Rptr. 435]; *Atlas Floor Covering* v. *Crescent House & Garden, Inc.,* 166 Cal.App.2d 211, 219 [333 P.2d 194]; *Blair* v. *Brownstone Oil & Refining Co.,* 35 Cal.App. 394, 396 [170 P. 160].

In applying that rule, depreciation in the value of equipment purchased for the purpose of performance was held the proper measure of damage in *Navarro* v. *Jeffries, supra,* 181 Cal.App.2d 454, 460, where the trial court found: ". . . that by reason of the defendant's breach of contract, the equipment had depreciated to a value of $1,060, and awarded the plaintiff $1,445.20, not the cost of the equipment, but the difference between the cost and the depreciated value thereof."

The same rule was applied with regard to a loss in the resale of equipment purchased for the purpose in *Douglass* v. *Guardian Holding Corp.,* 132 Cal.App. 585, 592 [23 P.2d 80].

■ Either an allowance for depreciation in value of the equipment during the period of delay, the rate being that for equipment not in use, or for a return of interest on its value at a reasonable rate, together with the payments made to personnel kept idle, would be a proper measure of damages.

■ There may be more than one rule for the measurement of damages in the same action. (*Rilovich* v. *Raymond,* 20 Cal.App.2d 630, 644 [67 P.2d 1062].)

In such case that one will be preferred which affords the better and more satisfactory means of reaching an accurate and certain result. (*Rilovich* v. *Raymond, supra,* 20 Cal.App.2d 630, 644.)

Where there is more than one method of ascertaining damages, that method which is most definite and certain should be adopted. No one method is exclusive, where several exist, but that one should be chosen which best achieves the fundamental purpose of compensation to the injured person for his loss; and if the facts show that either of two measures of damages will fully compensate plaintiff for his loss, that measure must be adopted which is less expensive to defendant. (*Colvin* v. *John Powell & Co.,* 163 Neb. 112 [77 N.W.2d 900]; 25 C.J.S. § 72, p. 842.)

### THE QUESTION OF INTEREST

■ The award of interest may not be sustained under the rules stated in *Lineman* v. *Schmid,* 32 Cal.2d 204 [195 P.2d 408, 4 A.L.R.2d 1380], as expounded also in *Ansco Const. Co.* v. *Ocean View Estates Inc.* 169 Cal.App.2d 235 [337 P.2d 146], and *Coronet Constr. Co., Inc.* v. *Palmer,* 194 Cal.App.2d 603 [15 Cal.Rptr. 601].

■ Since the damages awarded are for breach of contract, section 3288, Civil Code, has no application.

The judgment is reversed with directions to the trial court to re-assess damages in the light of the views expressed herein.

Brown (Gerald), P. J., and Coughlin, J., concurred.