[Civ. No. 8547. First Appellate District, Division One.—February 27, 1933.]

THEODORE PAPPADATOS, Appellant, v. THE MARKET STREET BUILDING CORPORATION (a Corporation) et al., Respondents.

Thomas P. O'Brien, Charles A. Christin and Knight, Boland & Christin for Appellant.

Chas. A. Gray, Jerome Politzer and Robert C. McGowan for Respondents.

THE COURT.—This appeal was taken by plaintiff from an adverse judgment in an action to enjoin the respondent Market Street Building Corporation from entering into a lease with the respondent California Orange Drink Company upon the ground that the execution of such a lease would be in violation of the terms of a lease theretofore entered into with appellant.

As a matter of fact, the lease with the California Orange Drink Company had been executed a few days before the complaint herein was filed; however, the action was tried before the term of the tenancy created thereunder had commenced to run; and judgment was entered in favor of appellant. Thereafter motion for new trial was made and came on for hearing before a different judge, and the motion was granted. The second trial was had before still another judge and, as indicated, judgment was entered in favor of respondents.

Both leases related to the use and occupation of certain stores in the Marshall Square Building at the corner of Market and Hyde Streets, San Francisco, of which the Market Street Building Corporation was the owner. The ground floor of the building fronting on Market Street provided an entrance to a theater, and the remaining frontage, on each side of the theater entrance, was divided into stores. For some time immediately preceding the execution of the lease with appellant the owner of the building had been operating a candy business, including the sale of ice-cream, soda-fountain drinks, fruit juices, and light lunches, in the store adjoining the east side of the theater entrance; and in February, 1929, it sold the equipment and fixtures therein to appellant for $5,500 and entered into a written ten-year lease with him for the use of said store. The lease provided for the payment of a rental of $250 a month for the first year, with an annual increase of $25 a month each year up to and including the fifth year; and it contained a provision that the property leased should "be used and occupied only for the manufacture and sale of candy, the service of ice cream, soda fountain drinks, sandwiches and light lunch . . . " It also contained the following provision: "While the lessee is lawfully in possession of the demised premises hereunder, the lessor agrees not to rent any other store on

the Market Street frontage of the Marshall Square Building *for a candy business.*" (Italics ours.) Approximately seven months later, and in September, 1929, the owner entered into a seven-year lease with the California Orange Drink Company, the tenancy to begin on October 1, 1929. The lease provided for a monthly rental of $250 for the first three years and $300 a month for the remaining four years; and it contained this provision: "The property hereby leased shall be used and occupied only for the manufacture and sale of citrus fruit drinks, which shall consist of orange, lemon, grapefruit and pineapple juices and other ingredients necessary for the manufacture thereof, but shall not be construed to cover the sale of carbonated drinks or bottled beverages, but shall only give the lessee herein the right to dispense of citrus fruit drinks as commonly sold in orangeade stands."

All of the testimony in the case shows without conflict that in and about San Francisco the sale of fruit juices is considered an essential part of the candy business; even the witness Robinson, the manager for the owner who theretofore had conducted the candy business on behalf of the owner and negotiated the sale thereof and the execution of the lease with appellant, in effect so testified; part of the store equipment the owner sold to appellant was made and used exclusively for the purpose of extracting fruit juices; and at each trial the court in substance found that the sale of fruit juices was part of the candy business. True, at the second trial the court found that it was "a small and incidental part of the business . . . "; but if the sale of fruit juices was deemed part of the candy business, the amount of the proceeds received from such sales would seem to be immaterial, so far as we are here concerned. As stated by all of the witnesses, the sale of all commodities aside from candy, such as fruit juices, ice-cream, soda-fountain drinks, etc., serves as an inducement to the sale of candy. Robinson himself testified that even though a great deal of that particular article was not sold, it was a necessary part of the business in order to satisfy the trade.

Respondents would narrow the meaning of the restrictive clause to the "manufacture and sale of candy"; but the lease does not so read. A much broader term is used. The lease prohibited the use of any other store "for

a candy business". As said in *Edward Barron Estate Co.* v. *Waterman,* 32 Cal. App. 171 [162 Pac. 410, 411] : "The scope, purpose, and effect of the lease of course must be determined from a consideration of it as a whole rather than by a resort to any individual clause thereof (Civ. Code, sec. 1641). So construed the lease must be given such an interpretation as will make it effective in conformity with the intention of the parties (Civ. Code, sec. 1643) ; and if its terms are in any way ambiguous or uncertain it must be interpreted in the sense in which the lessee believed at the time of making it that the lessor understood it (Civ. Code, sec. 1649) ; and if different constructions of its clauses may be otherwise equally proper, that construction must be given which will be most favorable to the party in whose favor the clauses in controversy were made (Code Civ. Proc., sec. 1864)." Furthermore, section 1654 of the Civil Code provides in part: " . . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party . . . "

In the present case the lease was drawn by the owner, and obviously, if it were intended to confine the restrictive clause to the use of other stores for the "manufacture and sale of candy" only, the lease would have been so drawn. Moreover, all of the circumstances leading up to and attending the sale of the business to appellant show clearly that appellant believed that the lease would prevent any competition in that building with the business he was purchasing; and that Robinson likewise so understood it. If, as respondents contend, the term "candy business" be construed to mean only the "manufacture and sale of candy", then besides renting one store for the sale of fruit juices the owner could rent other stores for the sale of ice-cream, or soda-fountain drinks, and thus practically destroy the business sold to appellant. Manifestly such a condition was never contemplated by the parties when the business was purchased by appellant and the lease executed.

Respondents make the further contention that there is no ground for the issuance of an injunction against the California Orange Drink Company because it entered into the lease without notice of the restrictive covenant in appellant's lease. Said company did not file an answer in the

case and the foregoing point was not raised in the trial court; therefore it cannot be urged for the first time on appeal.

For the reasons stated the judgment is reversed.