[Civ. No. 16069. Fourth Dist., Div. One. Sept. 19, 1978.]

JOHN C. MABEE, Plaintiff and Respondent, v.
NURSERYLAND GARDEN CENTERS, INC.,
Defendant and Appellant.

COUNSEL

Klitgaard & Jones, R. J. Klitgaard, Ellis J. Horvitz and Marc J. Poster for Defendant and Appellant.

Peterson, Gamer, Muns, Branton & Price and Peter P. Gamer for Plaintiff and Respondent.

OPINION

WELSH, J.*—Nurseryland Garden Centers, Inc. (Nurseryland) appeals from a judgment for plaintiff John C. Mabee in the sum of $44,178 for breach of an agreement to lease a portion of a shopping center on the south side of Via de la Valle near Interstate 5 in Del Mar. Nurseryland contends first, the document relied upon by Mabee was not a completed lease in that the document was indefinite constituting only an agreement to agree and second, Nurseryland revoked the offer before it was accepted by Mabee. Nurseryland also alleges prejudicial error in the jury instructions.

On May 14, 1974, after approximately one year of negotiations, Nurseryland's president Ken Cook signed a proposed lease and initialed a plot plan which outlined the dimensions of the leased premises. The lease referred to the plot plan as "Exhibit A" but the plot plan initialed by Cook was not marked. The signed lease and the plot plan were then delivered to Mabee. The lease contained the following provision: "Execution of this lease by one party constitutes an offer which shall not be deemed accepted by the other party until the other party has executed this lease and delivered a duplicate original to the other party." Mabee signed the lease on May 30 but he did not deliver it to Nurseryland until June 10.

The lease referred to three other exhibits (A-1, B & C) that were not to come into existence until after the lease was signed. One such exhibit, "A-1," was to be a precise site plan showing Nurseryland's building, parking and access. Between May 14 and June 7 the parties considered three different site plans which had been prepared by Nurseryland's architect. The south boundary of all three site plans coincided with the

---

*Assigned by the Chairperson of the Judicial Council.

south boundary of the initialed plot plan and the total square footage of each site plan was approximately the same as the plot plan. However, two site plans, including one marked "Exhibit A, A-1," varied in dimension from the plot plan. Their north and west boundaries were not coterminous with the plot plan. Mabee testified that all three site plans were acceptable to him although he expressed a preference for "A, A-1."

Discussions concerning alternate site plans were in progress when Nurseryland began side negotiations for a possible lease in the Flower Hill shopping center across the street. On June 7 Cook told his attorney Nurseryland had decided to lease from Flower Hill and the attorney was instructed to prepare a letter revoking the Mabee lease. On June 10, after a conversation with Cook, Mabee's negotiator, Petrich, suspected Cook was stalling. He communicated his suspicions to Mabee, who instructed Petrich to immediately deliver the signed lease to Cook. This was done. When Cook received the signed lease he asked Petrich if he had received the revocation. Petrich stated he had received no revocation. Cook then telephoned his counsel who allegedly told him the revocation was in transit to Mabee. Mabee received the revocation later that afternoon. The lease that was delivered by Petrich to Cook did not have attached to it the initialed plot plan. The next day Petrich wrote "Exhibit A" on the initialed plot plan and mailed it to Cook with another copy of the lease. Nurseryland claims the change in boundaries on two of the site plans under consideration signifies the parties had never agreed on a plot plan. Thus, it is urged, the lease was never formed and Mabee's belated forwarding of the initialed plot plan (exhibit A) was a useless act.

The appeal raises two questions. First, did the written lease and plot plan set forth all the material elements of the agreement, leaving only details for further resolution, and second, was the lease accepted by Mabee before it was revoked by Nurseryland. We conclude both issues were correctly resolved in favor of Mabee by an adequately instructed jury.

The lease consists of 39 pages, and covers all aspects of leasing shopping center property and construction of a building. The leased premises are described as "a parcel of land with an *approximate* depth of 300 feet and *approximate* width of 135 feet together with buildings having an *approximate* area of 7550 sq. feet." (Italics added.) The location of the leased premises within the shopping center was shown on exhibit A (plot plan) to the lease agreement. The description of this exhibit in the lease reads: "The *approximate* boundaries and location of the leased premises

are outlined in red on the plot plan of the Shopping Center, which is marked Exhibit 'A' attached hereto and made a part hereof. An *exact* legal description of the leased premises will be prepared, executed and acknowledged in the form of a memorandum of lease as provided in Section 1.03." (Italics added.) Section 1.03 provides the exact description shall not be prepared until 30 days after the leased premises are opened for business.

The primary purpose of the contract to lease was to secure Nurseryland's participation in the shopping center. The insignificance to the parties of exact boundaries is demonstrated by the lease provisions which describe *approximate* boundaries, call for an *exact* site plan to be prepared after the lease is executed and further provide for exact legal descriptions to be prepared 30 days after Nurseryland opens for business.

■ Minor, nonessential details in a lease may be left for future agreement. Uncertainty of such details does not render the contract unenforceable if the terms can be settled by a reasonable determination (*City of Los Angeles* v. *Superior Court,* 51 Cal.2d 423, 433 [333 P.2d 745]). ■ Whether a contractual detail is essential is a matter of degree. Essentiality is settled by "determining whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement." (*City of Los Angeles* v. *Superior Court, supra,* 51 Cal.2d 423, 433; *Pacific Hills Corp.* v. *Duggan,* 199 Cal.App.2d 806, 809 [19 Cal.Rptr. 291]; *Belcher* v. *Williams,* 151 Cal.App.2d 615, 620 [311 P.2d 861].) ■ Specification of exact boundaries of the leased premises was not necessary to this bargain. The exact site location was to be agreed to later. If the parties could not agree, the matter would be settled by the court (*City of Los Angeles* v. *Superior Court, supra*). Although Mabee expressed a preference for a site plan that varied from the approximate boundaries outlined on the plot plan, he was agreeable to accepting any one of the three proposals, including the one that corresponded to the initialed plot plan. Therefore the contract to lease was valid and binding on Nurseryland and the failure to deliver the initialed plot plan with the lease was not fatal.

■ The crucial questions of formation of an agreement (meeting of the minds) and priority of delivery of acceptance or revocation of the agreement were questions of fact left to the jury under appropriate instructions. The court instructed: "[A] lease contract came into being between these parties hereto if you should find, pursuant to all of the

instructions herein, (1), that as of the time of the signing of the lease on May 30, 1974, the plaintiff and defendant did agree on the same boundaries for the leased premises, and, (2), that said lease was delivered to the defendant before notice of revocation of the offer to lease was communicated by the defendant to the plaintiff." To make certain a general verdict did not mask jury confusion, the trial court wisely submitted two special verdict forms on which the jury recorded its findings that (1) the lease was delivered to Nurseryland on June 10, 1974, before revocation was communicated to Mabee and (2) the parties agreed on the same boundaries for the leased premises when the lease was signed by Mabee on May 30, 1974. No confusion was caused by other instructions. The instruction: "It is also not necessary that the exhibits named, per se, in the lease, Exhibits A-1, B and C, be delivered at any time since these were to become into existence after the acceptance date of the lease" correctly states the undisputed facts revealed by the lease document itself.

The special verdicts disclose the jury's grasp of the essential issues which they fairly resolved under the evidence.

Judgment affirmed.

Brown, (Gerald), P. J., and Wiener, J., concurred.